IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELIZABETH DAVIS                                                           PLAINTIFF

v.                                   No. 4:05CV00740 WRW

UNITED STATES POSTAL SERVICE,
John E. Potter, in his official capacity as
Postmaster General                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

**BACKGROUND**

        In her December 20, 2005 Amended Complaint,[1] Plaintiff alleges a violation of Title VII

because of her race (white) and gender when she was threatened by two co-workers in the presence

of supervisors.[2]  She complains that the United States Postal Service ("USPS") breached an EEOC

settlement agreement by failing to conduct a thorough investigation into the actions of Johnny

Marshall, a black male, and Delores Overton.  In addition, Plaintiff contends that the threats violated

federal employment policy regarding a safe workplace.  She also asserts that USPS denied her right

of exercise of free speech under the First Amendment of the United States Constitution by failing

to protect her by enforcing its policies to ensure safety and a non-hostile work environment.

Invoking pendent jurisdiction, Plaintiff alleges that the actions or inactions of the USPS set out

above resulted in a violation of her right of exercise of free speech under the Arkansas Constitution

and under the Arkansas Civil Rights Act ("ACRA") for race and gender discrimination.  Plaintiff

seeks both compensatory and punitive damages.

---

        [1]The original Complaint was filed on May 16, 2005.  The docket does not reflect service
of this Complaint.

        [2]The Amended Complaint was dismissed without prejudice as to Johnny Marshall by
order filed on June 29, 2006, because of Plaintiff's failure to prosecute.  Plaintiff failed to
respond to the June 29, 2006 show cause order regarding her failure to serve Marshall.

**ARGUMENTS**

On January 5, 2007, USPS filed a motion for summary judgment supported by brief, exhibits, and a separate statement of undisputed facts.  First, Defendant asserts that Plaintiff's complaint is barred by the October 16, 2003 settlement agreement.  Defendant notes that although Plaintiff does make one reference to breach of the settlement agreement, she seeks neither specific performance nor rescission of the settlement agreement - - only monetary damages.  USPS further contends that the Overton incident is not mentioned in Plaintiff's informal EEO complaint regarding her confrontation with Marshall.  As a result of that failure and Plaintiff not filing a separate EEO complaint regarding the alleged threat by Overton, USPS asserts the claim as to Overton is barred for failure to exhaust administrative remedies.

Next, USPS argues that Plaintiff cannot make a *prima facie* case of discrimination on the basis of her race or gender as failure to take disciplinary action against a co-employee for the co-employee's misbehavior does not qualify as an adverse employment action for purposes of a claim of discriminatory treatment on the basis of race and gender.  Defendant continues that there is no evidence to show that management's decision that the Marshall incident was not a threat to Plaintiff's personal safety is based on Plaintiff's race or gender.

USPS further argues that, even if Plaintiff could show a *prima facie* case, she cannot show pretext.  Defendant contends that two investigations were conducted - - one by Kenneth Little, the Manager of Distribution Operations Tour II, in 2003 based on the settlement agreement and the other by Larry Harrison, Manager of Distribution Operations Tour III in 2005 based on the EEOC remand order.  USPS also contends that Little instructed Marshall to have no contact with Plaintiff.  Plaintiff's amended complaint does not allege any confrontation with Marshall after May 23, 2003, and the settlement agreement required only that USPS conduct a "thorough investigation" of the Marshall incident that had been fulfilled.  USPS contends that it has articulated non-discriminatory

reasons for its actions by addressing Plaintiff's complaint regarding Marshall's conduct.  USPS argues that although Plaintiff is not satisfied and USPS may have reached an erroneous conclusion about the conduct, she cannot show that its reasons are pretext for racial and gender discrimination.

Turning to the claim of hostile work environment, USPS asserts that the Marshall and Overton incidents do not, either individually or collectively, rise to the level of hostile work environment - - objectively to a reasonable person and subjectively to Plaintiff - - on the basis of her race or gender as required to establish a *prima facie* case.  Defendant argues that Plaintiff has no evidence that the misconduct of her co-workers was based on her race or sex or that management's alleged failure to take appropriate action was based on her race or gender.  USPS states that these isolated incidents occurred because Plaintiff was checking the employee parking lot for vehicles that were improperly parked in handicapped parking spaces and they were not sufficiently pervasive or severe to rise to the level of a hostile work environment.

Additionally, USPS argues that this Court lacks subject matter jurisdiction of the non-Title VII claims as Plaintiff's exclusive remedy is Title VII.  Finally, Defendant states that claims for monetary damages for violations of constitutional rights are not actionable against agencies of the United States government.

In the February 2, 2007 response, Plaintiff states that the ultimate issues in this case are whether Marshall issued a threat to Plaintiff; whether USPS violated its own Zero Tolerance Policy; and whether those facts taken together constitute a hostile work environment that continues to be forced upon her.

She contends that she has established a *prima facie* case since she is in a protected group of being female and of being white.  Plaintiff continues that she was subjected to unwelcome harassment when Marshall approached her in a threatening manner at the time clock the afternoon of May 23, 2003; told her she was in trouble and that she was going to get her ass hurt; told her to

stay out from behind his vehicle; and called her a "nappy-headed whore."  She asserts that Overton, later that day, told her that she would take Plaintiff to court if there was even one scratch on her car. Plaintiff argues that USPS did not take action against Marshall in violation of its own Zero Tolerance Policy; violated the settlement agreement with Plaintiff; and failed to take prompt and effective remedial measures to end the harassment which they knew about.

Next, Plaintiff addresses the argument that the settlement agreement bars all her Title VII claims.  She states that USPS failed to advise the Court that the February 15, 2005 EEOC decision clearly and explicitly documents that USPS breached the settlement agreement when the agency failed to honor its duty to conduct a "thorough" investigation.  She points to the evidence that at least one of the named witnesses to the incident was never contacted and that the agency's finding no breach of the settlement agreement was reversed.  Plaintiff argues that USPS is estopped from making any argument seeking a remedy under that settlement agreement.

Plaintiff also asserts that she was granted the right to file a civil action in each of the EEOC decisions rendered in this case, and has satisfied all administrative prerequisites.  Regarding whether the incident involving Overton is barred from consideration since it was not included specifically in the EEOC case, Plaintiff argues that courts do not insist upon a precise identity of the claims raised administratively and those pursued in subsequent litigation.

Plaintiff argues that she has provided direct evidence of race/gender discrimination through her affidavit and the statements of two witnesses who heard the same phrase from Marshall including that Plaintiff may get hurt and was a "nappy-headed whore."  She insists that saying "nappy-headed whore" to a woman of a different race clearly shows a discriminatory attitude based upon gender and race.

She also discusses situations where the Zero Tolerance Policy against threats of violence were enforced in being a legitimate reason for terminating an employee.  Plaintiff states that USPS

is perhaps the most notorious employer to have violence in its workplace and the threat of violence still affects Plaintiff since Marshall clocks on duty at the register room time clock where she works, and still gives her menacing looks.  She continues that the policy may be violated by inaction as well as action, and here supervisor Cathy Sims did nothing and declined to give a statement during the first investigation.  Plaintiff contends that the inaction by USPS, coupled with the conduct of Marshall, constituted a hostile work environment.

She also charges that the deceitful conduct by USPS's supervisors and management which allowed her to be threatened and to be called a "nappy-headed whore" in violation of the Zero Tolerance Policy also breached the settlement agreement and constitutes disparate treatment. Plaintiff alleges that recently an African American union steward "punched out" a white employees and the Zero Tolerance Policy was not enforced, and that Marshall had previously assaulted a white female.[3]  She states that the threat to her was clearly documented, so the manager does not have discretion in determining that some form of disciplinary action should be imposed.

Plaintiff turns to events after the settlement agreement was entered into on October 16, 2003. She states that the agreement provided that Little was to perform a thorough investigation within 30 days. Plaintiff contends that instead, Little filed an untimely memorandum dated November 26, 2003, consisting of the following 75 words with no attachments or enclosures to document any action having been taken by USPS:

> Ms. Davis had been asked to check the employee parking lot for people in the handicap spots without proper tags.  Mr. Marshall denies her statement that he threatened her for writing his licence number down.  He did admits [sic] calling her a name that he should not, but did not threaten Ms. Davis.  There were no other

---

[3]Exhibits 11-13 to Plaintiff's response reflect that Sherrie A. Todd, a white female, filed an EEOC charge on February 14, 1993, alleging that Marshall, while drunk at work on October 30, 1993, had cursed her and tried to hit her face with his fist, but he was not terminated despite being under a last chance agreement while she had been issued a letter of warning.

> witnesses and based on statements of both employees, I conclude that was NO threat
> made to E. Davis.[4]

She contrasts the above statement with the one Little made on July 15, 2004.  Little stated that he had asked the witnesses named by Plaintiff for a written statement of the incident, but none of the witnesses would give one and stated that they did not wish to get involved.  Plaintiff asserts that both of Little's statements are contrary to the May 30, 2003 statement of Robert Stultz, where he identified Sterling Walker and Sims as witnesses.  In his November 26, 2003 statement, Stultz confirmed that he witnessed the incident along with Walker and Sims and that no one had contacted him as a witness.  She challenges the eventual statement of Sims, which was inconsistent with Marshall's own admission that he called Plaintiff a name.  Plaintiff faults USPS for never obtaining a written statement from Marshall.

She argues that USPS did not cooperate or comply even after given directives by the EEOC, and she asserts the EEOC, February 15, 2005 order changed the terms of the breached settlement agreement which provided that Little would perform the investigation, not someone with his title.  Plaintiff states that Harrison, who performed the 2005 investigation, was unacceptable.  She contends that she would not have agreed to a settlement if he had been offered as the investigator initially.  Plaintiff asserts that Harrison has an extreme adversarial relationship with her husband, is an African-American male, and is the brother-in-law of the President of the local union which represented Marshall, a steward for the union.

She argues that the second investigation that occurred two years later was rendered meaningless by the filing of the civil suit, and that absolutely nothing resulted from the investigation.  Plaintiff contends that, despite the absolute certainty that a threat had been made

---

[4]Exhibit 6 to Defendant's January 5, 2007 statement of facts.

against her by an employee with a propensity toward that sort of conduct, a hostile work environment was permitted.

On March 8, 2007, USPS replied. Defendant maintains that the 2003 settlement agreement bars Plaintiff's complaint. USPS describes that the EEOC did find in its February 15, 2005 decision that a thorough investigation of the Marshall incident had not been conducted and directed that an exhaustive investigation by USPS be conducted within 30 days with a submission of the investigative file to the EEOC's compliance officer within 30 days of the conclusion of the investigation. Defendant continues that an investigation was conducted and a report dated March 17, 2005, was prepared. USPS relates the investigative file was submitted to the EEOC although it was not immediately forwarded. USPS states that the EEOC then notified Plaintiff and USPS, on June 13, 2005, that the necessary corrective action had been taken and the compliance monitoring had ceased. The investigative file was resubmitted on February 2, 2006. USPS argues that the breach of the settlement agreement - - failure to conduct a "thorough" investigation - - was cured by June 13, 2005, less than 30 days after Plaintiff filed her original complaint.

In addition, USPS asserts that the EEOC did not rescind the settlement agreement or reinstate Plaintiff's underlying complaint; the settlement agreement does not obligate USPS to take any disciplinary action whatsoever against Marshall, only a thorough investigation; the breach of the settlement agreement in failing to conduct a thorough investigation was corrected by June 13, 2005; and Plaintiff has not asked this Court to rescind the agreement. Defendant continues that Plaintiff is not entitled to rescission of the settlement agreement and reinstatement of her underlying complaint of discrimination unless she can demonstrate a material breach of the settlement agreement by USPS, and here Plaintiff did receive the benefit of the bargain which was USPS conducting an investigation in March of 2005 - - and this satisfied the EEOC.

In sum, Defendant argues that Plaintiff could ask the Court to rescind the settlement agreement and to reinstate her underlying complaint of discrimination, but, even if she did so, she cannot demonstrate a material breach of the settlement agreement as the breach has been corrected so there is no basis for rescission.

The final point in the reply is that Plaintiff cannot show a *prima facie* case of hostile work environment on the basis of race or gender because, assuming the conduct of Marshall and Overton occurred as Plaintiff alleges, the conduct does not rise to the required level. USPS states that the fact that Marshall and Overton are African-American and Plaintiff is Caucasian does not satisfy the requirement that the harassment occurred because of Plaintiff's race. Defendant also states that Plaintiff has not presented any evidence to demonstrate that the lack of disciplinary action against either employee was because of Plaintiff's race or gender.

**STANDARD OF REVIEW**

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[5] The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial.[6]

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., "[to] point[ ] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is

---

[5]Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2512 (1986).

[6]Celotex Corp. v. Catrett, 106 S. Ct. 2548 (1986); Federal Civil Procedure Rule 56.

then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[7]

"The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law."[8]

## ANALYSIS

Plaintiff did not address USPS's argument that this Court lacks subject matter jurisdiction over the non-Title VII claims.  The Eighth Circuit Court of Appeals held that Title VII is the exclusive civil remedy available when a federal employee is using the same factual allegations to support both Title VII and non-Title VII or state claims.[9]  Thus, Plaintiff's claims under the United States Constitution, the Arkansas Constitution and the ACRA are preempted.

The next issue is whether Plaintiff's complaint is barred by the October 16, 2003 settlement agreement.

The regulations in 29 C.F.R. § 1614.504 concerning the effect and procedures associated with an administrative settlement reads:

(a)  Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties.  Final action that has not been the subject of an appeal or civil action shall be binding on the agency.  If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance.  The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

---

[7]Counts v. MK-Ferguson Co., 862 F.2d 1338, 1339 (8th Cir. 1988) (internal citations omitted and brackets in original).

[8]Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

[9]Mathis v. Henderson, 243 F.3d 446, 451 (8th Cir. 2001).

(b)  The agency shall resolve the matter and respond to the complainant, in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision.  The complainant may file such an appeal 35 days after he or she has served the agency with the allegations of noncompliance, but must file an appeal within 30 days of his or her receipt of an agency's determination.  The complainant must serve a copy of the appeal on the agency and the agency may submit a response to the Commission within 30 days of receiving notice of the appeal.

(c)  Prior to rendering its determination, the Commission may request that parties submit whatever additional information or documentation it deems necessary or may direct that an investigation or hearing on the matter be conducted.  If the Commission determines that the agency is not in compliance and the noncompliance is not attributable to acts or conduct of the complainant, it may order such compliance or it may order that the complaint be reinstated for further processing from the point processing ceased.  Allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints under § 1614.106 or § 1614.204, as appropriate, rather than under this section.

In addition, 29 C.F.R. § 1614.409 provides "[f]iling a civil action under § 1614.408 or § 1614.409 shall terminate Commission processing of the appeal.  If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Just over two months ago, the Eighth Circuit dealt with the issue of a Title VII Negotiated Settlement Agreement as explained below:

A plaintiff alleging that the government failed to comply with the terms of a Title VII Negotiated Settlement Agreement can "request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated."  29 C.F.R. § 1614.504(a).  Settlement agreements, including those entered into by the government, are viewed in light of governing contract principles, and a party is not entitled to rescission of a contract absent a material breach of the agreement.  Harris is thus not entitled to rescission of the agreement and reinstatement of his complaint absent a material breach of the agreement by the Corp. Whether a breach of contract is material is measured by examining the "extent to which the injured party will obtain the substantial benefit ... reasonably anticipated."

Harris asserts that he did not receive the benefit he anticipated when he entered into the agreement because the independent classifier did not interview other accounting

-10-

officers at the GS-12 and GS-13 levels and failed to consider the position descriptions prepared by the Fort Worth office. We disagree.[10]

The undisputed evidence in the record establishes that Plaintiff and USPS entered a settlement agreement[11] on October 16, 2003, that provided the following terms:

> Elizabeth shall be entitled to administrative leave for the remaining [sic] of October 16, 2003.

> Elizabeth shall be entitled to one day of administrative leave in the future with no time limit.  Elizabeth shall notify Ken Little of the date of administrative leave.

> Ken Little shall perform a thorough investigation of this incident within 30 days of this date.

The undisputed evidence further reflects that Little submitted the November 26, 2003 investigative memorandum, identified previously.  On July 6, 2004, Plaintiff notified the EEO Dispute Resolution Manager that the settlement agreement had been breached and must be set aside and her EEO complaint allowed to proceed.  Plaintiff was advised on July 9, 2004, by the EEO Dispute Resolution Manager for USPS that it would investigate her allegation that there had not been compliance with the terms of the settlement agreement involving a "thorough investigation." The EEOC responded by August 3, 2004, letter to Plaintiff that it had found that the terms of the settlement agreement had not been violated.

On February 15, 2005, the EEOC found, after reviewing the record of the agency's investigation and the documentation pointing to its deficiencies, that the agency failed to carry out a full and complete investigation into the alleged incident.  The decision noted that Plaintiff had submitted signed affidavits of two witnesses to the incident in which each attested to the verbal confrontation between Plaintiff and the co-worker.  One of the witnesses attested that he had read

---

[10]Harris v. Brownlee, 477 F.3d 1043, 1047 (8th Cir. 2007) (internal citations and footnote omitted).

[11]Exhibit 5 to the Local Rule 56.1 statement filed by USPS.

the supervisor's report and found it to be incorrect because he had never been contacted for a witness statement.  The EEOC rejected Plaintiff's request that her EEO complaint be reinstated and found that the appropriate remedy was to remand the case to the agency for further processing.  It directed that an exhaustive investigation by USPS be conducted within 30 days and a submission of the investigative file to the EEOC's compliance officer within 30 days of the conclusion of the investigation.  Harrison wrote the EEO Dispute Resolution Manager on March 17, 2005, detailing the investigation he conducted March 9-14, 2005.  He reported the contact he made with and the affidavits he obtained from three witnesses - - Sims, Stultz, and Sterling Walker - - as to whether they witnessed Marshall making threatening statement to Plaintiff and whether they witnessed Plaintiff being called a name during the same incident.  Sims stated that Marshall told Plaintiff that his car was not parked illegally, she should mind her business, "nothing bet [sic] not happen to my car," but she did not recall Marshall calling Plaintiff a name.  Stultz stated that Marshall said in a loud and threatening manner to Plaintiff to stay away from his car or she could get hurt and Marshall called her a "nappy-headed whore."  Walker stated that Marshall made a non-complimentary statement to Plaintiff referring to her as a "nappy-headed whore," but he could not construe Marshall's implication nor Plaintiff's inference as to whether the statement was threatening.  The report stated that, when asked if they had any additional comments about the alleged incident, none of the witnesses had any relevant information.

On April 12, 2005, the EEOC denied Plaintiff's request for reconsideration of the February 15, 2005, decision requiring enforcement of the settlement agreement.  Plaintiff filed this lawsuit on May 16, 2005.  On June 13, 2005, the EEOC notified Plaintiff that the agency had provided documentation sufficient to demonstrate that it had taken the corrective action order in the Commissions decision and so that compliance monitoring activity had ceased.

Although the EEOC initially found a breach of the settlement agreement, it concluded that the appropriate remedy was to enforce the terms of the agreement by requiring that the agency conduct the thorough investigation agreed to by the parties. Another investigation was conducted and statements were taken from the witnesses identified by Plaintiff. Plaintiff and Stultz agreed that Marshall had told Plaintiff, in a threatening manner, to stay away from his car or she could get hurt and called her a "nappy-headed whore." Sims remembered that Marshall told Plaintiff that his car was not parked illegally, that Plaintiff should mind her business, that nothing had better not happen to his car, but she did not recall Marshall calling Plaintiff a name. Walker stated that Marshall had referred to Plaintiff as a "nappy-headed whore," but he could not construe Marshall's implication nor Plaintiff's inference as to whether the statement was threatening. Marshall, during the initial investigation, admitted calling Plaintiff a name that he should not have, but that he did not threaten her.

The settlement agreement only required a thorough investigation which appears to have been conducted by Harrison when he questioned the witnesses identified by Plaintiff albeit not in the time frame originally designated by the parties. As noted above, Marshall admitted that he had called Plaintiff a name, but not all of the statements supported Plaintiff's allegation that Marshall had threatened her. In addition, the settlement agreement did not require that any disciplinary action be taken against Marshall after the investigation. Thus, I find that Plaintiff received the "substantial benefit ... reasonably anticipated" by the October 16, 2003 settlement agreement,[12] and she is not entitled to rescission of that agreement or reinstatement of her complaint.

---

[12]It does not appear that Plaintiff raised the issue of not receiving a day of administrative leave to use at her convenience until she submitted her February 2, 2007 affidavit which is Exhibit 5 to her response.

Finally, the standard to be applied for determining whether there has been exhaustion of administrative remedies concerning allegations against Overton follows:

> Although an EEOC complaint "need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court," it must nevertheless "be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim."[13]

Here, Plaintiff never mentioned Overton until the filing of her original complaint over three years after the alleged incident and or in any of her numerous communications and appeals with the EEOC including the issue of the thoroughness of the investigation.  Under these circumstances, Plaintiff did not provide sufficient notice to USPS or the EEOC of a claim involving Overton.

Accordingly, USPS's January 5, 2007 Motion (#13) for Summary Judgment is GRANTED.

IT IS SO ORDERED this 16th day of May, 2007.


/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE

---

[13]Fair v. Norris, 480 F.3d 865, 867 n.2 (8th Cir. 2007) (internal citation omitted).